UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JOHNNY L. JONES,

               Petitioner,

v.                                Case No. 3:19-cv-1134-MMH-JBT

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

               Respondents.

_____

## ORDER

### I. Status

Petitioner Johnny L. Jones, an inmate of the Florida penal system, initiated this action on October 3, 2019, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc. 1). He filed an Amended Petition (Doc. 6) on December 12, 2019.[1] In the Amended Petition, Jones challenges a 2012 state court (Putnam County, Florida) judgment of conviction for burglary while armed with a firearm and grand theft. He raises five claims. See Amended Petition at 5-16. Respondents have submitted a memorandum in opposition to the Amended Petition, see Response to Petition (Response; Doc. 11), with exhibits, see Docs. 11-1 through 11-4. Jones filed a brief in reply. See Reply (Doc. 16). His Amended Petition is ripe for review.

_____

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On April 13, 2009, the State of Florida charged Jones with burglary while armed with a firearm (count one) and grand theft (count two) in Putnam County case number 2009-CF-534. Doc. 11-2 at 6. On November 2, 2012, Jones filed two counseled motions to suppress statements he made to law enforcement during a recorded interview on November 29th and 30th, 2008. In the motions, he alleged that Detective Mike Kelly ignored his request for an attorney, id. at 8, and that he was under the influence of drugs and intoxicants at the time of his interview and was coerced by threats that his mother would be prosecuted, id. at 10.[2] The court held a hearing on November 20, 2012, id. at 504-60, and denied the motions, id. at 562. At the conclusion of a trial on November 20, 2012, the jury found Jones guilty of burglary (with special findings that the structure was a dwelling, and that he was armed, armed himself within the dwelling with a firearm, or helped another person or persons arm themselves within the dwelling with a firearm) and grand theft. Doc. 11-3 at 167-68, 184-85. That same day, the court sentenced Jones to life imprisonment for count one and a term of imprisonment of five years for count two. Id. at 187, Amended Judgment.

---

[2] In response, the State argued that the claims were litigated and denied in Jones's other state-court criminal case (Putnam County case number 2008-CF-2437) after a pretrial hearing on February 10th and 11th, 2010. Doc. 11-2 at 12-13.

On direct appeal, Jones, with the benefit of counsel, filed an <u>Anders</u>[3] brief. <u>Id.</u> at 210. The State filed a notice that it did not intend to file a response. <u>Id.</u> at 222. Jones filed a pro se brief, arguing that the trial court erred when it denied his 2009 motion to suppress (ground one), 2012 motions to suppress (grounds two and five), and motion to dismiss (ground four); instructed the jury on an offense and theory not charged in the Information (ground three); and sentenced him to life imprisonment (ground eight). <u>Id.</u> at 225-63. He also argued that the State's notice to seek prison releasee reoffender sentencing (ground six) and the court's defective verdict form (ground seven) violated his due process rights. <u>Id.</u> The State filed a notice that it did not intend to file a supplemental response. <u>Id.</u> at 265. The Fifth District Court of Appeal (Fifth DCA) affirmed Jones's conviction and sentence per curiam without issuing a written opinion on April 1, 2014, <u>id.</u> at 268, and issued the mandate on April 25, 2014, <u>id.</u> at 270.

On June 9, 2014, Jones filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. <u>Id.</u> at 272. In the request for postconviction relief, Jones asserted that his trial counsel was ineffective because he failed to: call Jones's mother (Sandra L. Royal) and her boyfriend (Lonnie Burt or Berr) as witnesses at the suppression hearing to impeach

---

[3] <u>Anders v. California</u>, 386 U.S. 738 (1967).

Officer Kelly's testimony (ground one), id. at 274-77; file a motion for change of venue and question each prospective juror about preconceived notions (ground two), id. at 277; call Assistant State Attorney Christopher Ferebee as a witness at the suppression hearing (ground three), id. at 278-81; properly investigate and prepare for the suppression hearing (ground four), id. at 281-83; hire an expert videographer to determine if the interview DVD had been tampered with (ground six), id. at 287-88; request an "independent act" jury instruction (ground seven), id. at 288; request a jury instruction on trespassing as a lesser included offense of burglary (ground eight), id. at 289; file a motion to reconsider related to the illegal detention and arrest based on Garcia v. State, 88 So. 3d 394 (Fla. 4th DCA 2010) (ground nine), id. at 289-96; file a motion to suppress related to Jones's incriminating statements (ground ten), id. at 296-300; and refer to Jones's statement (that he told his co-defendant that no guns would be taken or used) in closing argument (ground twelve), id. at 304-06. He also argued that trial counsel was ineffective because he filed a boilerplate motion to suppress (ground five), id. at 283-86, and misadvised and coerced Jones not to testify at trial (ground eleven), id. at 300-04. The State responded, id. at 316, and asked that the court set an evidentiary hearing on ground eleven, id. at 319, and Jones replied, id. at 321. The court set an evidentiary hearing on grounds two and eleven, and denied Jones's postconviction motion as to the remaining grounds. Id. at 329-35. On February 5, 2016, the court held

4

an evidentiary hearing, at which Jones represented himself and trial counsel (Kevin R. Monahan) testified. Doc. 11-4 at 4-32. On March 29, 2016, the court denied Jones's Rule 3.850 motion as to ground two, and granted Jones's request to dismiss ground eleven. Id. at 34-36.

On appeal, Jones filed a pro se amended initial brief, id. at 92-137, and the State filed an answer brief, id. at 139-51. On August 25, 2017, the Fifth DCA, in a written opinion, reversed the trial court's summary denial of grounds three and seven, remanded the case for further proceedings as to those grounds, and affirmed "without discussion" the trial court's denial as to the remaining grounds. Jones v. State, 226 So. 3d 1012 (Fla. 5th DCA 2017); Doc. 11-4 at 153-57. The court issued the mandate on September 20, 2017. Doc. 11-4 at 159.

On remand, the State filed a response to the claims raised in grounds three and seven, id. at 175-80, and Jones replied, id. at 312-16. The court denied the Rule 3.850 motion as to these claims on February 6, 2019, id. at 318-21, and denied Jones's pro se motion for rehearing on February 27, 2019, id. at 468. On appeal, Jones filed an initial brief, id. at 474-88, and the State declined to file an answer brief, id. at 490. The Fifth DCA per curiam affirmed the trial court's denial of the Rule 3.850 motion on July 2, 2019, id. at 493, and issued the mandate on July 26, 2019, id. at 495.

5

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. <u>See</u> <u>Chavez v. Sec'y, Fla. Dep't of Corr.</u>, 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007); <u>Jones v. Sec'y, Fla. Dep't of Corr.</u>, 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Jones's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of

law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016); see Teasley v. Warden, Macon State Prison, 978 F.3d 1349, 1356 n.1 (11th Cir. 2020). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v.

9

Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. A district court's obligation is "to train its attention on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Wilson, 138 S. Ct. at 1191-92). Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court,

10

either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra,</u> at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and

> sentence are guided by rules designed to ensure that
> state-court judgments are accorded the finality and
> respect necessary to preserve the integrity of legal
> proceedings within our system of federalism. These
> rules include the doctrine of procedural default, under
> which a federal court will not review the merits of
> claims, including constitutional claims, that a state
> court declined to hear because the prisoner failed to
> abide by a state procedural rule. See, e.g., Coleman,[4]
> supra, at 747-748, 111 S. Ct. 2546; Sykes,[5] supra, at
> 84-85, 97 S. Ct. 2497. A state court's invocation of a
> procedural rule to deny a prisoner's claims precludes
> federal review of the claims if, among other requisites,
> the state procedural rule is a nonfederal ground
> adequate to support the judgment and the rule is
> firmly established and consistently followed. See, e.g.,
> Walker v. Martin, 562 U.S. 307, 316, 131 S. Ct. 1120,
> 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler,
> 558 U.S. 53, 60-61, 130 S. Ct. 612, 617-618, 175
> L.Ed.2d 417 (2009). The doctrine barring procedurally
> defaulted claims from being heard is not without
> exceptions. A prisoner may obtain federal review of a
> defaulted claim by showing cause for the default and
> prejudice from a violation of federal law. See Coleman,
> 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be

excused under certain circumstances. Notwithstanding that a claim has been

procedurally defaulted, a federal court may still consider the claim if a state

habeas petitioner can show either (1) cause for and actual prejudice from the

default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d

1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).
[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that

14

> counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

"[T]he standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at ---, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at ---, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one of the Amended Petition, Jones asserts that the trial court erred when it denied his motion to suppress because the police illegally detained and arrested him in violation of his federal constitutional rights. Amended Petition at 5. Jones argued this issue, as ground one, in his pro se brief on direct appeal, Doc. 11-3 at 235-38; the State notified the court that it did not intend to file a response, id. at 265-66; and the Fifth DCA affirmed Jones's conviction per curiam, id. at 268.

Respondents contend that Jones's Fourth Amendment claim is barred because he had a full and fair opportunity to litigate it in the state courts. Response at 15. The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494 (1976). The Eleventh Circuit has explained:

> An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of a fourth amendment claim, Stone v. Powell bars federal habeas corpus consideration of that claim whether or not the defendant employs those processes.

Lawhorn v. Allen, 519 F.3d 1272, 1288 (11th Cir. 2008) (quoting Caver v. Alabama, 577 F.2d 1188, 1192 (5th Cir. 1978)).

The laws and criminal rules of the state of Florida provide an opportunity for the full and fair litigation of a Fourth Amendment claim. See Fla. R. Crim. P. 3.190(g), (h). Jones availed himself of this opportunity when he filed a motion to suppress, arguing in relevant part that the police illegally detained and arrested him. The circuit court held an evidentiary hearing on February 10th and 11th, 2010, Doc. 11-2 at 15-502, and ultimately denied the motion to suppress and denied a request for reconsideration, id. at 562. Jones also raised the issue on appeal in his pro se brief before the appellate court, Doc. 11-3 at 235, and the appellate court issued a ruling, id. at 268. Given this record, this Court cannot review the Fourth Amendment claim included in ground one because Jones had a full and fair opportunity to litigate this Fourth Amendment challenge before the state court. See Stone, 428 U.S. at 494; Lawhorn, 519 F.3d at 1288. Therefore, Jones is not entitled to federal habeas relief on the claim raised in ground one.

Alternatively, assuming that the claim is not barred, Jones, nevertheless, is not entitled to relief on the basis of this claim. He raised this issue on direct appeal. To the extent that the appellate court decided Jones's claim on the merits, the Court will address the claim in accordance with the

18

deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jones is not entitled to relief on the basis of the claim in ground one.

## B. Ground Two

As ground two, Jones asserts that the trial court erred when it denied his motions to suppress statements he made to law enforcement on November 29th and 30th, 2008. Amended Petition at 7. He asserts that when he refused to comply with law enforcement, they told him that his mother had been arrested and would be charged if he did not make a statement. Id. Additionally, he stated that he requested an attorney, but the officers erased that portion of the recorded interview. Id. Jones argued these issues, as grounds two and five, in his pro se brief on direct appeal, Doc. 11-3 at 239-49 (ground two), 255 (ground five); the State notified the court that it did not intend to file a response, id. at 265-66; and the Fifth DCA affirmed Jones's conviction per curiam, id. at 268.

To the extent that the appellate court decided Jones's claim on the merits, the Court will address the claim in accordance with the deferential

standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jones is not entitled to relief on the basis of the claim in ground two.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Jones's claim is without merit because the record fully supports the trial court's denial of Jones's motions to suppress.[7] Doc. 11-2 at 15-502 (2010 hearing), 504-60 (2012 hearing), 562 (order denying motion to suppress/reconsider).[8] Accordingly, Jones is not entitled to federal habeas relief on his trial court error claim in ground two.

## C. Ground Three

As ground three in the Amended Petition, Jones asserts that counsel (Kevin R. Monahan, Florida Bar #348546) was ineffective because he failed to

---

[7] In relying on the factual findings made at the 2010 hearing, the trial court stated that "Judge Hedstrom's ruling was lawful" based on "over a day of testimony." Doc. 11-2 at 560.

[8] Jones raised similar issues in his Rule 3.850 motion (grounds one, five, and six), Doc. 11-3 at 274-77, 283-88; the postconviction court denied his motion as to the ineffectiveness claims, id. at 329, and the Fifth DCA affirmed the postconviction court's denial as to the claims, see Jones, 226 So. 3d at 1013; Doc. 11-4 at 153 ("We affirm the denial of the remaining grounds without discussion.").

call a witness who would have provided favorable testimony at the suppression hearing. Amended Petition at 8. According to Jones, an Assistant State Attorney testified at deposition that investigators told him that Jones would make a statement "to get relief or immunity for his relative." Id. Jones maintains that the Assistant State Attorney would have provided similar testimony at the suppression hearing if counsel had called him as a witness. Id.

Jones raised the claim in his Rule 3.850 motion (ground three), stating that counsel was ineffective because he failed to call Assistant State Attorney Ferebee as a witness at the suppression hearing. Doc. 11-3 at 278-81. The postconviction court denied his request for postconviction relief with respect to the claim, stating that "[a] review of the deposition of ASA Chris Ferebee clearly refutes Defendant's claims that he was coerced into making his statements." Id. at 332. On appeal, the Fifth DCA reversed the postconviction court's summary denial of the claim, stating in pertinent part:

> In ground three, Jones argued his trial counsel provided ineffective assistance by failing to call Assistant State Attorney Chris Ferebee during a suppression hearing. A facially sufficient claim of ineffective assistance for failure to call a witness must allege: "the identity of the potential witness, the substance of the witness' testimony, an explanation of how the omission of the testimony prejudiced the outcome of the case, and a representation that the witness was available for trial." Spellers v. State, 993 So. 2d 1117, 1118 (Fla. 5th DCA 2008) (citing Leftwich

21

v. State, 954 So. 2d 714 (Fla. 1st DCA 2007)). Jones alleged that Ferebee would have testified that law enforcement communicated to him that they also arrested Jones's mother, resulting in Jones's cooperation in exchange for the possibility of her immunity.

In its order denying ground three, the postconviction court noted that the trial court denied the motion to suppress without a hearing and attached the relevant motion and order. On appeal, Jones challenges the postconviction court's findings by asserting that a suppression hearing actually did occur, referring to it as the "hearing held on November 12, 2012," which coincides with his trial date. A review of the transcript in Jones's direct appeal demonstrates that the trial court heard the motion to suppress before proceeding to trial, considering argument from both sides. The State presented two witnesses, and Jones testified on his own behalf. Thus, the postconviction court incorrectly stated that no hearing occurred.

The postconviction court further found that Ferebee's deposition, purportedly attached to the order, refuted Jones's claim of coercion. However, the record does not include the deposition as an attachment. Although the postconviction court described "Appendix D" as containing Ferebee's deposition, the appendix, perhaps mistakenly, contains only Jones's mother's deposition, not Ferebee's. Thus, because the order does not include record attachments conclusively refuting ground three, we reverse and remand for the postconviction court to "attach the correct records or address the claim on the merits." See Hunter v. State, 187 So. 3d 1265, 1265 (Fla. 5th DCA 2016) (citing Fla. R. Crim. P. 3.850(f)(4)).

Jones, 226 So. 3d at 1013-14 (footnote omitted); Doc. 11-4 at 154-55. On

remand, the postconviction court denied Jones's request for postconviction

relief with respect to the claim, stating in pertinent part:

> On Ground Three, Defendant claims that Trial Counsel was ineffective by failing to call State Attorney Chris Ferebee as a witness at the Suppression hearing.
>
> As noted in the appellate opinion, the Trial Court Order signed on July 6, 2015, incorrectly stated that no suppression hearing occurred[,] and that potential witness ASA Ferebee's deposition was attached as Appendix D. Apparently, the suppression hearing was held immediately before trial on November 12, 2012. The Court now attaches[,] as Appendix A[,] a transcript of ASA Ferebee's deposition.[9]
>
> After a review of Appendix A, the Court is not convinced that testimony provided by Ferebee would have been favorable to Defendant, nor would it have supported Defendant's assertion that he was coerced into making his statements. Ground Three is denied.

Doc. 11-4 at 319 (emphasis deleted). The Fifth DCA affirmed the postconviction

court's denial of relief.

To the extent that the appellate court decided Jones's ineffectiveness

claim on the merits,[10] the Court will address the claim in accordance with the

---

[9] Doc. 11-4 at 323 (Deposition of Assistant State Attorney Ferebee).

[10] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1192.

deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jones is not entitled to relief on the basis of the ineffectiveness claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Jones's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. There is a strong presumption in favor of competence when evaluating the performance prong of the Strickland ineffectiveness inquiry. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Jones must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have

24

done more; in retrospect, one may always identify shortcomings. <u>Waters v. Thomas</u>, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. <u>Ward</u>, 592 F.3d at 1164 (quotations and citation omitted); <u>Dingle v. Sec'y for Dep't of Corr.</u>, 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

At a 2010 deposition, Ferebee testified that Investigator Middleton called him because "Jones wanted [to] talk to a prosecutor to -- in order to gain some sort of immunity or some sort of release for his relative." Doc. 11-4 at 327. According to Ferebee, Jones "basically said he was willing to cooperate in the murder investigation, but he wanted to be promised something in return," and Ferebee responded that he would not promise Jones anything. <u>Id.</u> at 328. Ferebee testified that his conversation with Jones lasted less than thirty seconds, and he never spoke with Jones again. <u>Id.</u> At the 2012 suppression hearing, the State called Detective Michael Kelly and Detective John Merchant as witnesses. Doc. 11-2 at 504-22. Jones testified on his own behalf, stating that he was never promised anything in return for his statements. <u>Id.</u> at 535, 540-41.

On this record, Jones has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Even assuming arguendo deficient performance by defense counsel, Jones has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had called Ferebee as a witness at the 2012 suppression hearing. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Jones is not entitled to federal habeas relief on his ineffectiveness claim in ground three.

### D. Ground Four

As ground four, Jones asserts that counsel was ineffective because he failed to investigate and prepare for the 2012 suppression hearing and trial. Amended Petition at 10. He states:

> Trial counsel did no investigation. Spoke with no witnesses for Defendant and did not speak with any State listed witnesses. Attempted to impeach an officer with the wrong deposition that was taken by prior counsel.[11] Failed to read through everything given to him by prior counsel.

Id. Respondents argue that Jones did not properly exhaust a portion of ground four (pertaining to counsel's failure to investigate and prepare for trial) in the

---

11 Docs. 11-2 at 290 (Detective Ruiz's testimony at the 2010 suppression hearing), 518-22 (Detective Merchant's testimony at the 2012 suppression hearing); 11-4 at 414-15 (Detective Ruiz's fishing analogy during the 2008 recorded interview).

state courts, and therefore the claim is procedurally barred. Response at 12. The Court agrees that the claim has not been exhausted, and is therefore procedurally barred since Jones failed to raise the claim in a procedurally correct manner. Jones has not shown either cause excusing the default or actual prejudice resulting from the bar.[12] Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Notably, it appears that Jones intends to proceed with the ineffectiveness claim as it relates to the suppression hearing. Reply at 7. As to that portion of the claim pertaining to the 2012 suppression hearing, Jones raised the claim in his Rule 3.850 motion, as ground four. Doc. 11-3 at 281-83. The postconviction court summarily denied his request for postconviction relief with respect to the claim, id. at 332, and the Fifth DCA affirmed the postconviction court's denial of relief.

To the extent that the appellate court decided Jones's ineffectiveness claim on the merits,[13] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After

---

[12] "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 132 S. Ct. at 1309. As discussed in the alternative merits analysis that follows, this ineffectiveness claim lacks any merit. Therefore, Jones has not shown that he can satisfy an exception to the bar.

[13] Wilson, 138 S. Ct. at 1192.

a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jones is not entitled to relief on the basis of the ineffectiveness claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Jones's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. As to counsel's ineffectiveness for failure to investigate and prepare for the 2012 suppression hearing <u>and</u> trial, Jones has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Even assuming arguendo deficient performance by defense counsel, Jones has not shown any resulting prejudice. He has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had acted as Jones claims he should have. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Jones is not entitled to federal habeas relief on his ineffectiveness claim in ground four.

### E. Ground Five

As ground five, Jones asserts that counsel was ineffective because he failed to request an independent act jury instruction. Amended Petition at 16. He states:

> Trial counsel knew before trial Petitioner had admitted to a straight burglary with no firearms being involved. No firearms were taken to the burglarized home and Plaintiff never entered the home. Co-defendants acquired guns from inside the home.

Id. He raised the claim in his Rule 3.850 motion (ground seven). Doc. 11-3 at 288. The postconviction court denied his request for postconviction relief with respect to the claim. Id. at 333-34. On appeal, the Fifth DCA reversed the postconviction court's summary denial of the claim, stating in pertinent part:

> In ground seven, Jones argued his trial counsel provided ineffective assistance by failing to request an "independent act" jury instruction based on his allegation that "no guns were taken to burglarized home, he did not enter the home, and it had been agreed upon beforehand that no guns would be used or taken. Co-defendant acquired guns from inside of the home." "The 'independent act' doctrine applies 'when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, "which fall outside of, and are foreign to, the common design of the original collaboration."'" Roberts v. State, 4 So. 3d 1261, 1263 (Fla. 5th DCA 2009) (quoting Ray v. State, 755 So. 2d 604, 609 (Fla. 2000)). However, "an independent act instruction is inappropriate when the unrebutted evidence shows the defendant knowingly participated in the underlying criminal enterprise when the murder

occurred or knew that firearms or deadly weapons would be used." Id. at 1264.

Although the information charged Jones with burglary with a firearm,[14] the charging affidavit supports Jones's assertion that his cofelons acquired the weapons within the burglarized home. Jones asserted that he never entered the home, acting only as getaway driver to "straight burglary." Thus, the facts of this case suggest that Jones did not know "that firearms or deadly weapons would be used." See id. In its order,[15] the postconviction court summarized Jones's version of events, found that trial counsel offered a persuasive hypothetical in support of his theory of the case, and then concluded, without elaboration, "Even if [Jones] did not go inside the house but stayed outside as the driver, the Independent Act Doctrine would not have applied in this particular case." However, because the evidence showed that Jones never entered the home, planned for the use of a firearm, nor anticipated the recovery of firearms within the home, Jones raised a facially valid ground for relief. See id. Thus, the postconviction court erred by summarily denying this ground. See Peede, 748 So.2d at 257.[16] We reverse and remand for the court to "either attach the portion of the record that conclusively refutes [the] claim or conduct an evidentiary hearing on the matter." See Smith v. State, 69 So.3d 1034, 1035 (Fla. 5th DCA 2011) (citing White v. State, 19 So.3d 444, 445 (Fla. 5th DCA 2009)).

---

[14] Docs. 11-2 at 6, Information; 11-3 at 184 (Verdict as to Count 1).

[15] Doc. 11-3 at 333-34.

[16] Peede v. State, 748 So. 2d 253, 257 (Fla. 1999) (citing Fla. R. Crim. P. 3.850(d)) ("To uphold the trial court's summary denial of claims raised in a [Rule] 3.850 motion, the claims must be either facially invalid or conclusively refuted by the record.").

Jones, 226 So. 3d at 1014-15; Doc. 11-4 at 156-57. On remand, the postconviction court denied Jones's request for postconviction relief with respect to the claim, stating in pertinent part:

> On Ground Seven, Defendant claims that Trial counsel was ineffective for failing to request an "Independent Act" instruction at Trial.
>
> As noted in this Court's July 6, 2015, Order which denied Ground Seven of Defendant's Motion for Post-Conviction Relief, Defendant acknowledged that the purpose of the outing with his co-Defendants was to commit burglaries; that was their plan. Defendant claimed that he never entered the residence but remained in the vehicle as the driver. The Court found that the "Independent Act" instruction would not have been warranted, and denied Ground Seven finding that neither prong of Strickland had been met.
>
> Strickland is the cornerstone of review for Post-Conviction Relief and Collateral Attack on Ineffective Assistance of Counsel claims. After a more thorough review, this Court finds that the first prong of Strickland has not been met.
>
> The State's reliance on Stephens v. State, 787 So. 2d 747, 756 (Fla. 2001) is well placed.[17] In Stephens, the Florida Supreme Court found that a party is not entitled to a special jury instruction merely because it is requested. Rather, in order to receive the instruction, Defendant must show, as a threshold, that the special instruction was supported by the evidence. Defendant asserts in his Motion that he never agreed to steal any guns (Ground Seven), that he told his co-Defendant that no gun was to be brought along or taken (Ground Eleven), and that taking of guns was outside the plan (Ground Twelve).

---

[17] Doc. 11-4 at 178-79 (State's Response as to ground seven).

There was no evidence presented at trial to support Defendant's contention that he "didn't agree to steal any guns" as the Defendant now, after trial, retrospectively asserts.

Defendant's own statement to law enforcement indicated that he did participate in the burglaries and that his actions were part of a common scheme amongst the multiple Defendants. There was no disclaimer or insistence that guns not be involved. (See Appendix C, Part 2 of 2 interview of Johnny Jones).[18] Defendant never took the stand and therefore did not present any testimony that he agreed to participate in the burglaries only if guns were not involved. The evidence shows that defendant even participated in the disposal of the guns which implies consciousness of guilt. (See Appendix B, Part 1 of 2 interview of Johnny Jones, Page 9).[19] The DVD of this interview was published to the jury as Exhibit J (See Collective Appendix D, Trial Exhibit List and Trial Transcript, Pages 100-110).[20]

Under the circumstances, Trial Counsel was not ineffective for failing to request an "Independent Act" instruction at trial because the evidence did not warrant it. Ground Seven is denied.

Id. at 319-20 (emphasis deleted). The Fifth DCA affirmed the postconviction court's denial of relief.

To the extent that the appellate court decided Jones's ineffectiveness claim on the merits, the Court will address the claim in accordance with the

---

[18] Doc. 11-4 at 356 (Transcript of Interview of Johnny Jones, Part 2).
[19] Doc. 11-4 at 342 (Transcript of Interview of Johnny Jones, Part 1).
[20] Docs. 11-3 at 54-71; 11-4 at 448-60.

deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Jones is not entitled to relief on the basis of the ineffectiveness claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Jones's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. On this record, Jones has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonably professional assistance. Although Jones argued in his state-court postconviction motion that he did not agree to the use of firearms during the commission of the burglary, there was no evidence presented at trial to support the assertion. See generally Doc. 11-3 at 2-169, Trial Transcript. Counsel cannot be faulted for his failure to request an independent act jury instruction when the evidence did not support it. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument). Even assuming arguendo deficient performance by defense counsel, Jones has not shown any resulting prejudice. He has not shown that a reasonable probability

exists that the outcome of the case would have been different if counsel had requested an independent act jury instruction. His ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Jones is not entitled to federal habeas relief on his ineffectiveness claim in ground five.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Jones seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Jones "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El, 537 U.S. at 335-36 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a

claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.      The Amended Petition (Doc. 6) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.      If Jones appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 5th day of December, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-1 11/29
c:
Johnny L. Jones, V15226
Counsel of Record